UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x   **MEMORANDUM AND ORDER**
GESNER DELVA,                                                       Case No.   12-CV-0757 (FB)

        Petitioner,

   -against-

UNITED STATES OF AMERICA,

        Respondent.
---------------------------------------------------------------x


UNITED STATES OF AMERICA,                                           Case No.   04-CR-0314 (FB)

        Plaintiff,

   -against-

GESNER DELVA, a/k/a "Ti Blan,"

        Defendant.
---------------------------------------------------------------x

*Appearances:*
*For the Petitioner/Defendant:*　　　　　*For the Respondent/Plaintiff*:
ROBERT A. CULP, ESQ.　　　　　　　　　LORETTA LYNCH, ESQ.
Law Officers of Robert A. Culp　　　　　United States Attorney
29 Garrison's Landing　　　　　　　　　Eastern District of New York
P.O. Box 550　　　　　　　　　　　　　BY:　　WHITMAN G.S. KNAPP, ESQ.
Garrison, NY 10524　　　　　　　　　　　　　　Assistant United States Attorney
　　　　　　　　　　　　　　　　　　　　271 Cadman Plaza East
　　　　　　　　　　　　　　　　　　　　Brooklyn, NY 11201

**BLOCK, Senior District Judge:**

       Petitioner Gesner Delva moves to vacate his sentence pursuant to 28 U.S.C. § 2255. He also moves, *pro se*, for a new trial pursuant to Federal Rule of Criminal Procedure 33. Both motions are denied.

I

Following a second jury trial, Delva was convicted of cocaine importation and related crimes.[1]  *See* 21 U.S.C. §§ 952(a), 960(a)(1), 960(b)(1)(B)(ii); 21 U.S.C. § 963; 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A)(ii)(II).  The Court sentenced him principally to 293 months' imprisonment.  Prior to sentencing, Delva requested that his conviction be vacated because his trial counsel, John P. Dell'Italia, had provided ineffective assistance by refusing to permit him to testify.[2]  After inquiring into the matter, the Court issued an oral decision declining to hold a hearing on Delva's claim, and did not vacate the conviction on this or on any other basis.  On appeal, the Second Circuit upheld the Court's decisions, affirming the judgment of conviction and sentence in a Summary Order.  *See United States v. Fleurimont*, 401 F. App'x 580 (2d Cir. 2010).  It concluded that in light of the "overwhelming" evidence of Delva's guilt, his single ineffective assistance of counsel claim was "easily disposed of based on a lack of prejudice."  *Id*. at 583.

II

Delva's Rule 33 motion requests a new trial on grounds of "newly discovered

---

[1]Delva's first trial took place in June 2008 and resulted in a hung jury.  During the second trial, five of Delva's co-conspirators testified on the government's behalf as cooperating witnesses: Pascal Garoute, Jean Gardy Bapteau, Fenol Bernadelle, Milot Maitre, and Wista Louis.  While Delva testified at his first trial, he did not take the stand during the second trial nor did he call any witnesses.

Delva's offenses included cocaine importation, conspiracy to import cocaine, and conspiracy to distribute and possess with intent to distribute cocaine.  He was arrested in September 2007 by Haitian police with the assistance of the Drug Enforcement Administration ("DEA"), after which he was extradited to the United States.

[2]Dell'Italia represented Delva at both trials.

2

evidence." In contrast, his § 2255 petition seeks to vacate his sentence due to ineffective assistance of counsel and other reasons slightly differing from the substance of his Rule 33 motion. The § 2255 petition is addressed first, followed by the Rule 33 motion.

A.  **Section 2255 Petition**

The Court has made its best efforts to comprehend the long-winded, incoherent, and rambling arguments in Delva's § 2255 petition. As best the Court can glean, he claims that his conviction should be vacated because — for several reasons — he received ineffective assistance of counsel during his second trial and on appeal, had a conflict of interest with his trial counsel because of a fee dispute, and was illegally extradited from Haiti to the United States. His petition is meritless.

1.  **Ineffective Assistance of Counsel**

Delva argues that his trial counsel and first appeals counsel,[3] Alan Nelson, provided ineffective assistance by: (1) failing to object to impermissible character evidence; (2) permitting introduction of "flight evidence"; (3) not requesting a Court instruction regarding transcripts of recorded conversations in evidence; (4) failing to request corrective jury instructions relating to cooperating witnesses and the conspiracy charge; (5) improperly providing the jury with trial transcripts; (6) denying Delva the right to testify; and (7) failing to compare Delva's actions with those of a co-conspirator during sentencing.

To prevail on his ineffective assistance of counsel claims, Delva must show "(1) that [each] attorney's performance fell below an objective standard of reasonableness, and (2) that as

---

[3]Following Delva's appeal to the Second Circuit, he retained attorney Robert A. Ratliff. While Delva's petition does not distinguish between these appellate counsel, the Court understands his ineffective assistance claims to be directed toward Dell'Italia and Nelson.

3

a result he suffered prejudice." *United States v. Jones*, 482 F.3d 60, 76 (2d Cir. 2006) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "A reviewing court must indulge a strong presumption that counsel's [performance] falls within the wide range of reasonably professional assistance." *United States v. Gaskin*, 364 F.3d 438, 468 (2d Cir. 2004). Prejudice is shown only if "there is a reasonable probability that, but for counsel's unprofessional error, the outcome of the proceeding would have been different." *Wiggins v. Smith*, 539 U.S. 510, 534 (2003).

a. **Failure to Object to Impermissible Character Evidence**

Delva contends that Dell'Italia should have objected to the Court's improper admission of character evidence from several of the government's witnesses, and that counsel was ineffective in failing to raise this issue on appeal. Specifically, Delva points to portions of testimony from witnesses Pascal Garoute and Wista Louis regarding his involvement in drug transactions preceding the conspiracy, and argues that their testimony constituted impermissible character evidence not falling within any Rule 404(b)(2) exception.

Trial counsel's decision not to object to Garoute and Louis' testimony was a reasonable one. First, Louis' testimony concerned Delva's involvement in the crimes for which he was being tried, and thus was not character evidence of Delva's prior bad acts. *See* Tr. at 717 (during the conspiracy Delva was one of Louis' suppliers); 724-26 (discussing details of the conspiracy including how Louis bought cocaine from Delva to sell to her clients). Likewise, to the extent that these witnesses' testimony discussed Delva's prior acts, this testimony was clearly admissible under Rule 404(b).[4] *See* FED. R. EVID. 404(b)(2) (evidence of "crimes, wrongs, or other

---

[4]In accordance with Rule 404, the government provided advanced notice of its intent to offer character evidence and the grounds for its admission. *See* Fed. R. Evid. 404(b)(2) (requiring that a prosecutor provide "reasonable notice of the general nature of any such

4

acts" may be admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."). For example, Garoute testified about a similar cocaine importation scheme taking place in 1996-1997 that also involved transportation of contraband by boat and airplane from Haiti into the United States.[5] Tr. at 317-25 (describing that in the boat scheme, Delva "loaded" the drugs "in the tires . . . had the tools [] to open the tires . . . [and] was the one . . . that took them" to the port of departure."). Throughout this testimony, the government was careful to elicit generalized responses concerning the importation scheme. Tr. at 321 ("Now, describe again without using any particular names just generally how it was that the boat scheme that you participated in [] worked."). Accordingly, it was not error for trial counsel to refrain from objecting to such testimony, and neither was appeals counsel ineffective in choosing not to raise this argument. *See United States v. Cohen*, 427 F.3d 164, 170 (2d Cir. 2005) (a choice to not raise a futile objection does not render trial counsel's performance constitutionally ineffective).

b.      **Failure to Object to "Flight Evidence"**

Delva asserts that his trial counsel failed to object to the government's improper introduction of "flight evidence" as circumstantial evidence of his guilt. However, the government did not seek to establish his guilt with circumstantial evidence that he either fled or sought to flee from the crime scene. *See United States v. Al-Sadawi*, 432 F.3d 419, 424 (2d Cir. 2005) (providing that "flight evidence" is used to show "an admission [of defendant's guilt] by

---

evidence that [he] intends to use at trial.").

[5]The government alleged that beginning in 2002, Delva assumed control of a cocaine importation scheme involving transportation of the drugs from Haiti to the United States by boat and aircraft. Tr. at 318, 321-25.

5

conduct," where the district court admitted evidence that defendant's wife had attempted to obtain passports and airline tickets on an expedited basis following defendant's attempt to smuggle currency from the United States to Egypt). While Delva asserts that DEA Agent Bradley Cheek testified regarding his alleged "flight," this misstates the record. Cheek only testified that Delva was indicted in April 2004, and was considered a "fugitive" until his September 2007 arrest in Haiti. Tr. at 243.

**c.   Failure to Request a Jury Instruction Regarding Transcripts of Recorded Conversations**

Delva next argues that trial counsel should have requested a jury instruction when the Court charged the jury regarding transcripts of recorded conversations that had been introduced into evidence. These transcripts contained English translations of eight recorded conversations in the Haitian Creole language, in which Delva and other participants discussed the conspiracy. Delva contends that trial counsel should have requested an instruction from the Court "making clear" to the jury that he disagreed with the government's contention that he was a participant in these conversations.[6]

Delva's trial counsel repeatedly made clear that Delva contested his participation in the recorded conversations. On cross-examination, counsel questioned the accuracy of the testimony of the government witnesses who identified Delva's voice in the recordings, and attacked their credibility. Tr. at 368, 380 (questioning Garoute's motives in testifying against Delva), 779, 786-91 (attacking Bapteau's testimony and Louis' ability to identify Delva's voice).

---

[6]Delva does not object to admission of the transcripts themselves. Nonetheless, their admission was proper—the government authenticated the recordings using testimony from Agent Cheek and cooperating witnesses Jean Gardy Bapteau, Garoute, and Louis, and the parties stipulated that the transcripts, prepared by a certified translator, were true and accurate translations of the recordings.

6

Additionally, the Court charged the jury that in assessing the credibility of cooperating witnesses, "the jury [] should look at all the evidence in deciding what credence and what weight, if any, [] to give to the testimony of these types of witnesses." Tr. at 827-32.

**d.    Failure to Request Corrective Jury Instructions Regarding Cooperating Witnesses and the Conspiracy Charge**

Delva next contends that the Court "gave the jury the impression" that it found Bapteau and Maitre "to be credible witnesses" and thus "lent an imprimatur to the cooperating witness' testimony;" Pet. Br. at 22, therefore, trial counsel was remiss in not requesting a corrective jury instruction. However, the Court's instructions made clear that it was not expressing any opinion as to the credibility of the witnesses or "what [the] verdict should be." Tr. at 814-24 ("Since you are the sole and exclusive judges of the facts, I do not mean to indicate any opinion as to the facts or what your verdict should be. . . . [Y]ou determine the credibility of the witnesses; you resolve such conflicts as there may be in the witness's testimony."). And, contrary to Delva's additional contention, the Court's explanation that cooperating witnesses are eligible to receive a below-minimum guideline sentence was not tantamount to an opinion as to the credibility of witnesses who ultimately receive such sentences.[7] Tr. at 828.

Delva also claims that the Court's jury instructions on the conspiracy charge were erroneous because they "risk[ed] informing the jury that something less than proof beyond a reasonable doubt [wa]s necessary," Pet. Br. at 25. However, the Court, to the contrary, specifically told the jury that the burden of proof on the conspiracy charge was "beyond a reasonable doubt." Tr. at 841-46 ("In order to prove the crime of conspiracy, the government

---

[7]Bapteau and Maitre testified that in exchange for their cooperation, they each received a below-minimum guideline sentence. Tr. at 429-30; 552-54.

must establish the following elements beyond a reasonable doubt . . . . The government must prove beyond a reasonable doubt that two more persons entered into the particular unlawful agreement charged in the conspiracy count.").

e.      **Provision of Trial Transcripts to the Jury**

Delva argues that he received ineffective assistance when, during deliberations, the jury requested and received excerpts of Agent Cheek's trial testimony. On September 10, 2008 at 12:38 pm, counsel for both sides received a jury note with this request, and subsequently agreed to provide two copies of the testimony. Upon taking the bench, the Court created a record documenting these events. Tr. at 861.

Despite Delva's contention, it was proper for counsel to provide these excerpts to the jury without the Court's involvement.[8] *See United States v. Grant*, 52 F.3d 448, 449 (2d Cir. 1995) ("During deliberations the jury often asks to see or hear repetition of evidence previously introduced . . . . These requests may be satisfied in various ways, often not involving the presence of the court. Physical evidence is routinely sent into the jury room for inspection by jurors outside the presence of the court."). While Delva contends that he was not present when this occurred, this claim is unsupported by the record. Moreover, the Supreme Court has expressly held that due process affords a defendant "the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987). Even accepting Delva's assertion that he was absent, he has not explained how his presence at this juncture "would have been

---

[8]Delva's arguments are likewise misplaced because he was well aware that, upon their request, the jury could receive portions of trial transcripts to aid in their deliberations. Tr. at 852-53 (charging the jury and explaining the same).

8

useful . . . ." *Id.* ("[T]he Court has emphasized that this privilege of presence is not guaranteed when presence would be useless, or the benefit but a shadow." (citing *Snyder v. Massachusetts*, 291 U.S. 97, 106 (1934)).

**f.    Denial of Right to Testify**

While Delva contends that Dell'Italia prevented him from testifying during the second trial, the Second Circuit rejected this claim on Delva's direct appeal. *See Fleurimont*, 401 F. App'x 580, 583-84 (addressing the claim on its merits, and concluding that Delva failed to establish "a reasonable probability that, had he testified, the factfinder would have had a reasonable doubt respecting guilt." (citation and internal quotations omitted)); *see also Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010) ("[T]he so-called mandate rule bars re-litigation of issues already decided on direct appeal.") (citing *Burrell v. United States*, 467 F.3d 160, 165 (2d Cir. 2006)).

**g.    Sentencing**

Delva's assertion that his sentencing counsel erred in failing to argue for a lower sentence than that received by co-defendant Alix Hypolite, is also meritless.[9] The record demonstrates that Nelson raised this issue both in his pre-sentencing submission to the Court and during Delva's actual sentencing. Sentencing Mem. Dkt. No. 207; Sentencing Tr. at 9-10. As a result, the Court discussed the similarities and differences in conduct between the two individuals. Sentencing Tr. at 11-23 (discussing Hypolite's "lack of ability, lack of power," in contrast to Delva's ability "to come in and . . . lead this organization to . . . bring larger and larger amounts of cocaine into the United States . . . .").

---

[9]Hypolite received 290 months imprisonment.

2. **Conflict of Interest with Trial Counsel**

Delva contends that his conviction should be vacated because of a conflict of interest with his trial counsel, Dell'Italia, due to a fee dispute. Where a conflict of interest claim alleges that "the attorney shirk[ed] his ethical obligation to dutifully represent his client as a result of a fee dispute, . . . *Strickland* provides the appropriate analytic framework." *Id.* While Delva argues a "lapse of representation" by pointing to the substance of his ineffective assistance of counsel claims, the Court's rejection of each of these claims reflects that counsel's actions were well-supported and reasonable.

3. **Illegal Extradition from Haiti**

Finally, Delva asserts that his conviction should be vacated because he was extradited from Haiti in violation of the Extradition Treaty between the United States and Haiti ("Treaty").[10] Beyond this conclusory statement, however, Delva does not explain how his extradition violated any particular provision of the Treaty, nor does he provide any facts to support his contention.

B. **Rule 33 Motion**

In support of his Rule 33 motion for a new trial based upon "newly discovered evidence," Delva has only submitted his own affidavit, attesting to the following: (1) prior to his arrest in Haiti for the current crimes, the United States government unsuccessfully tried to sell him illegal drugs; (2) after his arrest he was illegally held in Haiti; (3) his extradition from Haiti was illegal; (4) a "district court administrator" was "aware" that he had a conflict with trial counsel concerning "money"; (5) the government's witnesses perjured themselves during trial;

---

[10]This argument is made *pro se* because Delva's counsel refused to include it in the § 2255 motion.

10

and (6) he is merely a "scapegoat" for drug crimes committed by an unnamed individual. Delva Aff. ¶¶ 5-11. Delva contends that "[t]his evidence is all exculpatory," and hence he is entitled to a new trial; in the alternative, he requests funds to further investigate his claims pursuant to 18 U.S.C. § 3006A.

On a Rule 33 motion, a defendant bears the burden of demonstrating that the purported newly discovered evidence "(1) is in fact newly discovered, i.e., discovered since the trial; (2) could not with due diligence have been discovered earlier; (3) is not merely cumulative or impeaching; (4) is material to the issues, and [] (5) is such [] . . . that upon a retrial it will probably produce an acquittal." *United States v. Fassoulis*, 203 F. Supp. 114, 117 (S.D.N.Y. 1962). The Second Circuit has "repeated[ly] instruct[ed] that such a motion should be granted only with great caution." *United States v. Alessi*, 638 F.2d 466, 479 (2d Cir. 1980) (internal citation and quotation marks omitted); *see also United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001) (holding that district courts "must exercise the Rule 33 authority sparingly and in the most extraordinary circumstances.").

Delva's affidavit is principally conclusory and devoid of evidentiary value. Even if given credence, the vagueness of his assertions cast doubt on their veracity. For example, in contending that the government's trial witnesses "were not being truthful" he does not provide the names of any witnesses who supposedly lied while testifying, nor does he identify the substance of their allegedly perjurious testimony or explain how their testimony affected the outcome of his trial. Likewise, in contending that he was "held illegally in Haiti by agents of both governments, contrary to Haitian, American, and international law," he does not explain why his detention was illegal, point to any laws that were violated, or provide any supportive

11

facts.[11] Nor does he explain how he learned about any of the alleged "new evidence."

Because Delva fails to identify any new evidence, explain its materiality, or demonstrate that it would have likely led to his acquittal, his Rule 33 motion is denied. *See, e.g., United States v. Gilbert*, 668 F.2d 94, 97 (2d Cir. 1981) (finding defendant's claim of government misconduct was mere "unsupported speculation," concluding that "[t]he mere allegation of government misconduct was wholly insufficient," to warrant relief on the Rule 33 motion); *United States v. Weinlein*, 234 F.3d 1263, at *3 (2d Cir. 2000) (affirming district court's denial of a new trial motion where the defendant offered no evidence "other than her own self-serving affidavits . . . [which were] insufficient to show failure to investigate."); *United States v. Podlog*, 1994 WL 177576, at *2 (S.D.N.Y. May 9, 1994) (denying defendant's motion for a new trial where he offered no evidence to substantiate the government misconduct claim "other than self-serving affidavits which [] [we]re highly suspect."). For these same reasons, Delva's request for funds to investigate his claims is likewise denied. *See United States v. Sanchez*, 912 F.2d 18, 21-22 (2d Cir. 1990) (affirming trial court's refusal to grant investigative funds under § 3006A(e) where the defendant failed to satisfy his burden that "the services [we]re reasonably necessary," stating that "a trial court need not authorize an expenditure under § 3006A(e) for a mere fishing expedition." (internal citation and quotation marks omitted)); 18 U.S.C. § 3006A(e) (provision of financial assistance for investigative services requires a court to first find that "the [investigative] services are necessary").

## CONCLUSION

For the foregoing reasons, Delva's motion to vacate his sentence pursuant to § 2255

---

[11]Each one of Delva's assertions concerning "newly discovered evidence" suffers from the same infirmities of vagueness.

is denied.  His Rule 33 motion is also denied.  As Delva has not made a substantial showing of a denial of his constitutional rights, a certificate of appealability will not issue.  *See* 28 U.S.C. § 2253.

**SO ORDERED.**

                                                              _____
                                                              FREDERIC BLOCK
                                                               Senior United States District Judge

Brooklyn, New York
July 23, 2013